UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL J. CARPINE, | ) |
| Plaintiff | ) ) ) |
| v. | ) 1:13-cv-00006-DBH ) |
| JAMES FOSS, | ) ) |
| Defendant | ) |

**RECOMMENDED DECISION**

Michael J. Carpine, a former inmate at the Aroostook County Jail, has sued the former jail administrator, James Foss, as a result of events arising in mid-November 2012 and continuing into the first week of December 2012. During that time period, while still housed at the Aroostook County Jail, Carpine contracted scabies and did not receive what he views as satisfactory medical treatment for this affliction. Foss has moved for summary judgment because he was on medical leave during the time in question and had no involvement, direct or indirect, in the events that form the basis of the complaint. Carpine has moved to amend his complaint to name alternative defendants. I now recommend that the court deny the motion to amend as futile and grant Foss's motion for summary judgment, resulting in the dismissal of the currently pending complaint.

A. THE SUMMARY JUDGMENT MOTION

**Statement of Undisputed Material Facts**

Carpine does not dispute the facts set forth in the summary judgment record. His complaint against Foss appears to be based entirely on the theory of either official-capacity municipality liability or respondeat superior. (See Response, ECF No. 22.) The material facts for summary judgment purposes are supported by Foss's affidavit and Carpine's own deposition.

Michael Carpine was held at the Aroostook County Jail from August 31, 2012, to December 7, 2012. (Carpine Dep. at 7:14-20.) His claims in the case are based on events that began in mid-November 2012. (Carpine Dep. at 29:24 to 30:6.) During that time frame, Carpine was held as a convicted inmate awaiting sentencing. (Carpine Dep. at 7:8-13.) Carpine had no direct contact with Foss from August 31, 2012, to December 7, 2012. (Carpine Dep. at 27:24 to 28:3.) Carpine concedes that Foss did not participate in any of the events that serve as the basis for his claims. (Carpine Dep. at 28:19-22.) In addition, Carpine has no information to suggest that Foss was even aware of any of the events that serve as the basis for his claims. (Carpine Dep. at 28:23 to 29:2.) Carpine testified that he has sued Foss for what he believes Foss did or did not do at the Jail. (Carpine Dep. at 46:22 to 47:3.)

Foss was employed as the administrator of the Jail from May 1991 to August 1, 2013. (Foss Aff. ¶ 1.) From October 12, 2012, to February 1, 2013, Foss was out of work on medical leave to receive treatment for and to recover from a serious medical condition. (Foss Aff. ¶ 2.) Due to his absence from work, Foss did not personally direct or oversee operations at the Jail from October 12, 2012, to February 1, 2013. (Foss Aff. ¶ 3.) Foss had no direct involvement or contact with Carpine from October 12, 2012, to February 1, 2013. (Foss Aff. ¶ 4.) Foss was not involved in any incident or decision-making at the Jail involving Carpine from October 12, 2012, to February 1, 2013. (Foss Aff. ¶ 5.) Foss has no contemporaneous knowledge of events at the Jail involving Carpine from October 12, 2012, to February 1, 2013. (Foss Aff. ¶ 6.)

## Discussion

Carpine's theory of his case against Foss is that "somebody needs to be held accountable for treating people [as he was treated at the jail]," and since Foss was the jail administrator in charge of operations, he is the one Carpine believes should be held accountable. (Carpine Dep.

at 28:8-22.)  The problem with his theory is that pursuant to 42 U.S.C. § 1983 the doctrine of respondeat superior is inapplicable.  Mere knowledge of a subordinate's wrongful conduct does not justify imposing civil rights liability on a supervisor.  Rather, there must be an affirmative link alleged between the conduct of the supervisor and the constitutional deprivation experienced by the plaintiff.  Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011); Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011);  Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009).  Supervisory liability involves more than being the officer in charge at the time of an incident.  Examples of affirmative links include "supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference" in relation to the deprivation.  Maldonado, 568 F.3d at 275 (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)).

In the present case we are not talking about a mere failure to meet a pleading standard.  There is an undisputed factual record which establishes that Foss was not even the officer in charge at the time of the incident.  There are simply no facts tying Foss to any of the events alleged in the complaint and he is entitled to judgment as a matter of law because he has no individual liability for any alleged constitutional violation.

Carpine's theory may be that he is suing Foss in an "official capacity" as the final policy maker or decision maker for Aroostook County as to matters pertaining to jail operations.  First, it appears highly unlikely that Foss is the final authority as to jail operations.  Maine law states that county sheriffs have "the custody and charge of the county jail and of all prisoners in that jail and shall keep it in person, or by a deputy as jailer, master or keeper."  30-A M.R.S. § 1501. More fundamentally, as explained in the context of the motion to amend, even if Carpine named the correct "official capacity" defendant, neither his complaint nor his proposed second amended

complaint state a claim for municipal liability against the county. Under section 1983, municipalities cannot be held liable for constitutional violations perpetrated by municipal employees simply because they are the employers. Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Section 1983 claims against a municipal defendant will only be successful under Monell if the entity was responsible for a policy, custom, or practice that caused the violation in question. Id. The applicable standard requires the plaintiff to "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). There is no hint in the complaints or Carpine's deposition testimony of any county policy regarding the treatment of prisoners inflicted with scabies. The constitutional deprivations, or negligent treatment, if any occurred, appear to be the work of individual jail personnel and medical providers.

**B.    THE MOTION TO AMEND**

### Allegations of the Proposed Second Amended Complaint

In his original complaint Carpine named the Aroostook County Jail and James Foss as defendants. On May 13, 2013, he moved to amend his complaint in order to voluntarily dismiss the Aroostook County Jail as a defendant. The amendment was granted without objection. Now, following the close of discovery, Carpine has again moved to amend his complaint, this time to add a Sgt. Leavitt and the Aroostook County Jail as defendants. According to the motion, Sgt. Leavitt filled in for Foss when Foss was out on medical leave. In his reply to the defendants' objection to his motion to amend, Carpine elaborates further. (See ECF No. 23, ¶ 7.) Carpine notes that Sgt. Leavitt signed one of his grievances directly related to the complaint and Carpine opines that Leavitt may have been the acting jail administrator while Foss was on medical leave.

The factual allegations of all three complaints are essentially the same and are set forth in ECF Nos. 20-1 and 20-2, the two exhibits accompanying the current motion to amend. Sgt. Leavitt does not appear to be mentioned in those documents.

According to the exhibits in support of the motion to amend, Carpine is presently confined in the Maine Correctional Center, Windham, Maine. When he was previously held at the Aroostook County Jail he filed a grievance for an itchy rash and possibly bugs in his cell. He was dismissed by the medical department at the jail and eventually thrown in the "hole" when he insisted that he had a problem with the bugs, most probably scabies. He seeks $10,000.00 in compensatory and punitive damages for the treatment he received. During November and December of 2012 he became very itchy and a rash developed all over his body. He placed his first medical request on November 4, 2012, and was treated with hydrocortisone cream. The condition became progressively worse. He placed multiple requests after November 4, 2012, but he got no further help and many of his requests did not even receive a response. He requested new blankets and a t-shirt, but that request was denied. At the end of November 2012, he filed another grievance that everyone in the pod signed, stating that people were itchy with rashes and that bugs had been seen in the pod. He received a receipt for the grievance from Officer Little, but never received a response and nothing was done.

Finally on December 1, 2012, Carpine could no longer stand the rash, bites, and constant itching and he had a "bit of a breakdown." He kicked his cell door, asking to be moved to another cell. His request was denied, but eventually he was placed in the "hole" where he had no bed, blankets, or even a toilet. He was left there for three to four days. Officer Martinez put him in the "hole." He was scratching almost to the point of bleeding. Then he was moved to the Max Unit where he again asked to see a doctor. The nurse visited him and agreed he would have

to see the doctor. He was never called to see the doctor and was instead sent to Maine Correctional Center a week later.

Upon his arrival at Maine Correctional Center they diagnosed scabies. Carpine was placed in medical isolation as his condition was contagious. He was given a prescription to kill the bugs. It has been stressful dealing with the effects of this ordeal. Carpine is still intermittently itchy and has a small rash. His condition is slowly improving. The Maine Correctional Center doctor has provided him with a prescription steroid for the itching and discomfort. Carpine has heard that after he left the Aroostook County Jail the person who was placed in his old cell developed the same problems.

## Discussion

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, prior to trial a party may amend his pleading once, as a matter of course at the outset of litigation, but may only amend the pleading further with the opposing party's consent or with leave of court. Fed. R. Civ. P. 15(a). When leave of court is called for, the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This standard is not difficult to meet, but it "becomes compounded with a higher standard" after the court's scheduling order deadline for amendment of pleadings and joinder of parties has expired. El-Hajj v. Fortis Benefits Ins. Co., 156 F. Supp. 2d 27, 34 (D. Me. 2001). Under Rule 16: "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Rule 16's good cause requirement is designed to ensure that the pleadings become fixed at some point in time. Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 327 (1st Cir. 2008). The good cause standard "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004). However, there are certain other

instances when amendment need not be allowed, even if the court were to excuse a delay in filing, such as a situation where the amendment would be futile.  See, e.g., Chiang v. Skeirik, 582 F.3d 238, 244 (1st Cir. 2009);  Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001).

Foss's primary response to the motion to amend is that the motion was tardy and therefore should not be allowed.  (ECF No. 21.)  Given Carpine's status as a prisoner litigant and the attendant difficulties in negotiating discovery and the procedural rules of court, I am inclined to find excusable neglect on his part and would allow the late filing if it were merely a matter of a technical defect in the pleading and amending it by naming a substituted party would solve the problem.  As a prisoner litigant he has actually been exceptionally diligent in *trying* to comply with rules and deadlines.  Unfortunately for Carpine, however, his proposed amendment has more problems than can be solved by a finding of excusable neglect.  In the final analysis, amending his complaint to add the Aroostook County Jail and Sgt. Leavitt as defendants would be futile.  For that reason I recommend denying the motion to amend.

Substituting Sgt. Leavitt for James Foss does not cure the respondeat superior hurdle I discussed in the context of Foss's motion for summary judgment.  The proposed second amended complaint does not include any facts about Leavitt's involvement, but Carpine's responsive pleading does reveal that Leavitt signed one of Carpine's grievances.   The denial of an administrative grievance, in and of itself, does not give rise to a constitutional violation, absent the presence of additional factual allegations.  Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999).  The proposed allegations against Sgt. Leavitt do not state a viable claim.

Nor is the Aroostook County Jail, a bricks and mortar building, an appropriate defendant.  Even if the pleading were construed to add Aroostook County itself, or the sheriff in his official

capacity, as a defendant, as I indicated above the proposed second amended complaint does not set forth a claim for municipal liability. Carpine's case fails, not because of technicalities, but because the factual allegations simply do not set forth a constitutional violation.

      I am not suggesting that the injury of which Carpine complains is insignificant or that given the right factual allegations a constitutional violation could not be made out. It is simply that in this case, which has the benefit of a deposition wherein Carpine could explain the circumstances of the incident in his own words, there is no viable claim for constitutional violations even if it were sorted out to name the proper defendants, such as the correctional officers and medical providers. Other courts have recognized that scabies could be deemed an objectively serious medical need. Ciccone v. Sapp, 238 Fed. App'x 487, 489 (11th Cir. 2007). Thus, Carpine's allegations could implicate his rights under the Eighth Amendment based on deliberate indifference to a serious medical need, if he were suing a proper defendant with allegations that the particular defendant was subjectively deliberately indifferent to the stated medical need. See Harris v. Kenosha Cnty. Med. Staff, No. 13-cv-00471-RTR, 2013 WL 2636079, at *2, 2013 U.S. Dist. Lexis 82720, at *4-*5 (E.D. Wis. June 11, 2013) (screening order).

      However, in my view this case does not warrant allowing Carpine another chance to file a motion to further amend his complaint because the factual circumstances as revealed by Carpine's own deposition testimony do not rise to the level of deliberate indifference to a serious medical need. Contrary to the complaint allegations, his sworn testimony reveals that his condition was not completely ignored by medical providers. (Carpine Dep. at 30:7 -33:20.) It is clear that the medical staff tried a number of different approaches, including hydrocortisone, calamine lotion, and Benadryl. As Carpine himself acknowledges, everybody can make

mistakes with a diagnosis.  (Id. at 29:8.)  Even negligent mistakes on the part of medical providers do not rise to the level of constitutional violations.  There is no factual support for an inference of deliberate indifference to serious medical needs based upon the record that has been developed in this case.

**C.     CONCLUSION**

Based upon the foregoing, I recommend that Foss's motion for summary judgment be granted and that Carpine's motion to amend be denied.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

November 20, 2013                             /s/ Margaret J. Kravchuk
                                              U.S. Magistrate Judge

Case 1:13-cv-00006-DBH   Document 25   Filed 11/20/13   Page 9 of 9   PageID #: 109